# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**MATTHEW RAY LESOWSKE,**

        Plaintiff,

    v.

**NANCY A. BERRYHILL**[1]
Commissioner of Social Security
Administration,

        Defendant.

Case No. 3:15-cv-2261-KI

**OPINION AND ORDER**

        Merrill Schneider
        Schneider Kerr Law Offices
        P.O. Box 14490
        Portland, OR 97293

                Attorneys for Plaintiff

        Billy J. Williams
        United States Attorney
        Janice E. Hebert
        1000 SW Third Ave., Ste. 600
        Portland, OR 97204-2902

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

Sarah Moum
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Ste. 2900 M/S 221A
Seattle, WA 98104-2075

      Attorneys for Defendant

KING, Judge:

Matthew Ray Lesowske ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act. For the following reasons, the Court AFFIRMS the Commissioner's decision.

<strong>STANDARD OF REVIEW</strong>

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193,

1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may

not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495

F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th

Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the

Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554

F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Application

Plaintiff filed an application for DIB on November 18, 2011, alleging disability

beginning December 31, 2002. AR 18. He was 43 years old at the alleged disability onset date.

AR 27. The Commissioner denied the claim initially and upon reconsideration. AR 18.  Plaintiff

thereafter requested a hearing before an Administrative Law Judge ("ALJ"). AR 18. After an

administrative hearing, at which reviewing physician Dr. Wil Nelp testified, the ALJ ruled that

Plaintiff was not disabled under the Social Security Act. AR 18. The Appeals Council denied

Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

AR 1. Plaintiff now seeks judicial review of that decision.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in

significant numbers in the national economy? If so, then the claimant is
not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*
*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The
Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the
Commissioner must show that the claimant can perform other work that exists in significant
numbers in the national economy, "taking into consideration the claimant's residual functional
capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966
(describing "work which exists in the national economy"). If the Commissioner fails to meet this
burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,
the Commissioner proves that the claimant is able to perform other work existing in significant
numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;
*Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ began his opinion by noting that Plaintiff met the insured status requirements of
the Act through December 31, 2007. AR 18. The ALJ further noted that Plaintiff must establish
disability on or before that date in order to be entitled to a period of disability and disability
benefits. *Id.* The ALJ then applied the sequential analysis. AR 19-32.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since
the alleged onset date of December 31, 2002. AR 20. At step two, the ALJ found that Plaintiff's
history of torn meniscus in the right knee and obesity were severe impairments. AR 20. At step
three, the ALJ found Plaintiff did not have an impairment or combination of impairments that

met or equaled one of the specific impairments listed in the regulations. AR 24. The ALJ

determined that "the overall medical record" suggested that from December 31, 2002 to

December 31, 2007 ("the relevant time period") Plaintiff had the RFC to perform light work. AR

24. The ALJ noted the following limitations: Plaintiff can occasionally lift 20 pounds, and

frequently lift ten; he can stand or walk for four out of eight hours combined; he can sit for six

hours; he cannot climb ropes, ladders, or scaffolds; he cannot crawl or kneel; he can occasionally

crouch and stoop; and he can no more than occasionally finger with his dominant hand. AR 24.

Plaintiff should also avoid exposure to the following: heights, hazards, heavy equipment,

vibration, cold, heat, wetness, humidity, and pulmonary irritants. AR 24. At step four, the ALJ

found that during the relevant period, Plaintiff was unable to perform any past relevant work. AR

31. At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ

found that Plaintiff could have performed jobs that existed in significant numbers in the national

economy during the relevant period, such as assembly work. AR 32. The ALJ thus found that

Plaintiff was not under a disability, as defined in the Social Security Act, at any time during the

relevant period. AR 32.

     In reaching his conclusion, the ALJ considered the opinions of non-examining, testifying

medical expert, Dr. Nelp, and treating physician, Dr. Valerie Krause. AR 27-29. Dr. Nelp

testified that during the relevant time period, Plaintiff could stand or walk for at least four hours

and sit for six; lift 20 pounds occasionally and less than ten pounds frequently; could only

occasionally crawl, stoop, crouch or balance; and that Plaintiff's bilateral overhead reaching

would be limited due to obesity and musculoskeletal neck complaints. AR 28; AR 63-64. The

ALJ rejected the doctor's overhead reaching conclusion because the ALJ found that complaints

of neck pain "do not appear until long after the claimant's date insured," and "obesity . . . should

not result in specific overhead reaching limits." AR 28. Otherwise, the ALJ gave "great weight" to Dr. Nelp's opinion because he spoke directly to Plaintiff's functionality during the relevant period and because he specializes "in internal medicine, nuclear medicine and thyroid disease." AR 28. The ALJ also found that Dr. Nelp had "more carefully examined only the evidence and impairments during the relevant period." AR 28.

Dr. Nelp's opinion conflicted with Dr. Krause's. Dr. Krause opined that the "combination of symptoms from the claimant's medical and mental health diagnoses" were disabling, and prevented Plaintiff from working. AR 28. For instance, Dr. Krause opined that Plaintiff had marked limitations in activities of daily living and social functioning, and that he can never reach, crawl, stoop, or lift more than ten pounds. AR 28. The ALJ found that Dr. Krause's conclusion—that Plaintiff's impairments had existed at the same severity and with the same functional limitations prior to the date last insured—was not supported by Dr. Krause's own treatment record. AR 29. The ALJ gave Dr. Krause's opinion "little weight." AR 29.

The ALJ also considered Plaintiff's testimony and statements regarding the pain and severity of his symptoms during the relevant period. AR 25-26. The ALJ found Plaintiff only partially credible. AR 26. For instance, Plaintiff appeared to testify about the severity of symptoms after the date last insured. AR 26. Although his impairments "worsened significantly in more recent years," objective medical evidence showed his symptoms were "not as severe as alleged prior to the date last insured." AR 26. Based in part upon these credibility determinations, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act at any time within the relevant time period.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) assigning Dr. Krause, the treating physician's opinion "little weight," and (2) assigning Plaintiff's subjective testimony only partial weight.

PAGE 7 – OPINION AND ORDER

**A.  Medical Opinion Evidence**

In response to an inquiry from Plaintiff's attorney, in July 2013, Dr. Krause wrote a letter and completed a questionnaire describing Plaintiff's impairments and Plaintiff's residual functional capacity. AR 1187-1201. Dr. Krause, opined that Plaintiff's impairments were present at their current severity before December 31, 2007. AR 1201. The ALJ declined to give Dr. Krause's opinion full weight, because it conflicted with Dr. Nelp's testimony, and because it was inconsistent with Dr. Krause's own treatment record. AR 29.

"The ALJ is responsible for resolving conflicts in the medical record," including conflicts among physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The applicable regulations distinguish among the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing 20 C.F.R. § 404.1527). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(c)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating physician's opinion is contradicted by another physician's opinion, the ALJ must provide "specific and legitimate reasons" for discrediting the treating physician's opinion. *Id.*

The ALJ may not reject a treating physician's opinion solely because it conflicts with a non-examining physician's opinion. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) ("The opinion of a nonexamining medical advisor cannot by itself constitute

substantial evidence that justifies the rejection of the opinion of an examining or treating physician."). The ALJ may, however, base his or her rejection "*in part* on the testimony of a nontreating, nonexamining medical advisor." *Id*. (emphasis in original). When a non-examining physician is subject to cross-examination, the ALJ may give the non-examining physician's testimony greater weight. *Andrews*, 53 F.3d at 1042.

If an ALJ declines to give the treating physician's opinion controlling weight the ALJ must consider six factors in determining the weight of any physician's opinion. 20 C.F.R. § 404.1527(c); *Orn v. Astrue*, 495 F.3d 625, 632–33 (9th Cir. 2007). Plaintiff argues that the ALJ incorrectly balanced the factors, and that a proper balance would favor Dr. Krause's opinion.[2] Because the ALJ adequately weighed and evaluated each doctor's opinion, and gave specific and legitimate reasons to support his assessment, the Court rejects Plaintiff's arguments.

The ALJ considered the treating physician's relationship to her patient. 20 C.F.R. § 404.1527(c)(2)(i)-(ii). The longer the treatment relationship, or the more times a treating physician has seen a patient, the more weight the ALJ should assign to the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2)(i). Additionally, the more knowledge a treating physician has about a claimant's impairments, the more weight the ALJ should assign to the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2)(ii). The ALJ acknowledged that Dr. Krause had been Plaintiff's "treating doctor since 2006," and that she was his primary care provider. AR 28. Dr. Nelp, by contrast, had not treated Plaintiff.

---

[2] To the extent Plaintiff argues that the ALJ failed to properly assess Dr. Krause's opinion because he did not expressly discuss each factor in 20 C.F.R. § 404.1527(c), the Court rejects that argument. The ALJ's opinion reflects that he considered each factor. *See* 20 C.F.R. § 404.1527(c) ("Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we *consider* all of the following factors in deciding the weight we give to any medical opinion.") (emphasis added); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (ALJ may reject opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.").

The ALJ also evaluated whether evidence supported each of the physician's opinions, and the quality of the explanation for those opinions. 20 C.F.R. § 404.1527(c)(3). The ALJ found Dr. Nelp's opinion warranted greater weight because Dr. Nelp "more carefully examined only the evidence and impairments during the relevant period, and his opinion speaks specifically to the claimant's functionality during such period." AR 28. Plaintiff argues that the ALJ improperly limited the non-examining physician's review of records to those created during the relevant period, thus improperly precluding the doctor from drawing inferences from later records. To the contrary, the record from the hearing demonstrates that Dr. Nelp reviewed all the medical evidence in the record. AR 59.

If an opinion is consistent with the record as a whole, it will be given more weight. 20 C.F.R. § 1527(c)(4). The ALJ found that Dr. Krause's opinion—that Plaintiff's symptoms had existed at their present severity since before December 31, 2007—was not consistent; it was "simply not supported by [her] own treatment record." AR 29, AR 1201, AR 1275. Plaintiff argues in his reply that the few treatment records from before 2007 do not contradict Dr. Krause's medical opinion. Plaintiff admits, however, that Dr. Krause identified several impairments that were not causing symptoms during the relevant period. Indeed, among Dr. Krause's lengthy list of medical conditions and symptoms, she included his right knee (repaired in 2002 without symptoms until 2008) and carpal tunnel syndrome (no pain after surgery in 2000). Although Dr. Krause opined that Plaintiff suffered from all of his impairments, including diabetes, before December 31, 2007, he was not diagnosed with diabetes until February 11, 2009. AR 29, AR 996, AR 1201, AR 1260. Dr. Krause also indicated that Plaintiff's knee caused him "daily pain in spite of surgery in 2002." AR 1187. But her treatment notes show that his symptoms abated after surgery in 2002, and only returned in 2008, after the date last insured. AR

PAGE 10 – OPINION AND ORDER

997, AR 1193. Dr. Krause additionally opined that Plaintiff suffered from severe symptoms of generalized anxiety disorder and major depressive disorder occurring on or before the date last insured. AR 1188, AR 1201, AR 1275, AR 1055 (in April 2008, Plaintiffs chalked his mood up to "winter blues"). But, according to Dr. Krause's own treatment record, Plaintiff first received treatment with oral medication for those disorders after the date last insured. AR 986, AR 1034.[3] The ALJ rationally questioned Dr. Krause's opinion given her imprecision with respect to the onset date of many of Plaintiff's impairments. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (explaining that inconsistency with medical records is a specific, legitimate reason for rejecting a treating physician's opinion).

Specialists' opinions may be given higher weight regarding their areas of expertise. 20 C.F.R. § 404.1527(c)(5). The ALJ found that Dr. Nelp—"a specialist in internal medicine, nuclear medicine and thyroid disease"—had a "greater level of specialization" than Plaintiff's primary care provider, a family practitioner. AR 28; *see* AR 192 (Physician's Statement of Professional Qualification). Plaintiff complains of diabetes, intestinal hernias, and neck and back pain related to herniated discs. ECF 18 at 4, AR 236. While Plaintiff's conditions were within Dr. Nelp's specialty, since internal specialists treat adults for a wide range of conditions, this reason is less persuasive than other reasons given by the ALJ.

Finally, the ALJ will consider any other factors brought to his or her attention. 20 C.F.R. § 404.1527(c)(6). Here, Dr. Nelp testified at the ALJ hearing, and was subject to cross-examination. *See* AR 59-76. This allowed the ALJ to accord his opinion higher weight. *Andrews*,

---

[3] Plaintiff also argues that the ALJ improperly based his decision on the inference that Plaintiff's pre-2007 medical records were sparse, when, as the record shows, the Social Security Administration lost or destroyed some of Plaintiff's records. AR 18; AR 311. Again, because the ALJ rationally questioned Dr. Krause's opinion based on its inconsistency with the available medical records, particularly the available post-2007 records, the ALJ did not err.

53 F.3d at 1042. The Court also rejects Plaintiff's argument that the ALJ erred by failing to ask Dr. Nelp to infer an onset date of disability under SSR 83-20. Because the ALJ issued an unfavorable decision, he was not required to determine an onset date of disability under the rule. SSR 83-20, *available at* 1983 WL 31249 ("In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability.").

In sum, although their relative specializations alone would not normally overcome the weight typically accorded a treating physician's opinion—after all, Dr. Krause is a family practitioner who also deals with a wide range of conditions—the ALJ's assessment of Dr. Krause's opinion compared with the medical record is an additional specific and legitimate reason to support his assessment of Dr. Krause's opinion. *See Andrews*, 53 F.3d at 1043 (explaining that the ALJ will meet his burden if he gives "specific, legitimate reasons based on substantial evidence" for discounting the treating physician's opinion); *Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## B.  Plaintiff's Credibility

Plaintiff also challenges the ALJ's decision giving Plaintiff's subjective symptom testimony and statements only partial weight. There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show

that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ gave only partial weight to Plaintiff's testimony for three reasons: (1) Plaintiff had not consistently followed his treatment provider's weight loss and exercise recommendations; (2) Plaintiff appeared to testify about the severity of his symptoms after his date last insured; and (3) Plaintiff's testimony and statements were unsupported by contemporary, objective medical evidence. AR 25-27. Plaintiff argues none of these is a clear and convincing reason to discount his testimony.

Plaintiff is correct that his failure to follow a weight loss and exercise regime is not a clear and convincing reason to discount his subjective testimony, and the Commissioner does not rely on this reason. *See* ECF 20 at 8 n. 3; *Orn*, 495 F.3d at 638 ("[T]he failure to follow treatment for obesity tells us little or nothing about a claimant's credibility."). Nonetheless, substantial evidence in the record supports the ALJ's other credibility findings. *Batson*, 359 F.3d at 1197

(explaining that the ALJ's overall credibility determination may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld).

That Plaintiff testified about symptoms after the date last insured supports the ALJ's decision to give Plaintiff's testimony only partial weight. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999) ("At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits. . . . Appellant must establish that her disability existed on or before [the last date insured]."). During the administrative hearing, the ALJ cautioned Plaintiff multiple times to speak only about the relevant period. AR 43, AR 45, AR 47, AR 76. But, at times, Plaintiff testified about pain and symptoms around the date of the hearing, and conflated those symptoms with what he felt before the date last insured. For instance, Plaintiff testified that a surgery in January 2007 had remedied symptoms related to his hernia "until just recently." AR 47. Plaintiff also indicated that Methadone, which he has been prescribed since 2002, "takes care of [his] pains," although, without Methadone the pain would be unbearable. AR 51. Plaintiff appeared to refer to his pain as of the hearing date—implying that it was under control—but also suggested that the prescribed treatment adequately controlled his pain throughout the relevant period. Plaintiff also responded to questions by his counsel about his knee pain at the hearing, saying that he was seeing a doctor for his knee pain in 2006 and 2007. AR 48-49. But, as he admitted in his reply brief, after his 2002 knee surgery, the pain "did not recur until 2008." ECF 21 at 2. Plaintiff's testimony was thus confusing as to the onset date and led the ALJ to reasonably question the severity of Plaintiff's pain during the relevant period.

The objective medical record also did not support Plaintiff's subjective statements about pain and severity. The ALJ noted that:

> During the relevant period, there are only limited treatment
> records, no evidence of diabetes or significant treatment for

> depression/anxiety, little evidence of pain complaints regarding the claimant's neck, knees or hands, indications that the claimant's hernia condition improved and that his hepatitis C did not require the interferon treatment.

AR 26.

As discussed above, Plaintiff was not treated for severe symptoms resulting from his general anxiety disorder and depressive disorder, suggesting these symptoms did not rise to a severe level until after the date last insured. AR 986, AR 1034. Plaintiff's testimony, that he "was having a lot of problems mentally" within the relevant time period, thus conflicts with the objective medical record. AR 49-50. Plaintiff's subjective testimony regarding his pain is also unsupported by the objective medical record. Although Plaintiff does not assert debilitating symptoms, he testified that his knee pain within the relevant period was "still giving [him] problems." AR 49. The medical record shows that in December 2004 and February 2005 "physical examination[s] revealed a normal gait." AR 26 (citing AR 1213-14; AR 1224). Additionally, a medical report dated June 30, 2006 indicated that Plaintiff did not require interferon treatment for his hepatitis C. AR 1205-06.

Because the ALJ identified the specific testimony he discounted, and gave clear and convincing reasons that were supported by substantial evidence in the record, this Court must uphold the ALJ's credibility determination. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding that even where the record evidence is somewhat equivocal, a court should not second-guess the ALJ's judgment when it is supported by substantial evidence).

///

///

## CONCLUSION

The ALJ properly discounted the treating physician's credibility and Plaintiff's credibility. The Commissioner's decision that Matthew Lesowske is not suffering from a disability is therefore AFFIRMED.

**IT IS SO ORDERED**.

DATED this __7__th day of ___March_____, 20_17_ .

/s/  GarrM. King_____
Garr M. King
United States District Judge